# LA FLEUR *v.* HARRIS.

PATENTS; INTERFERENCE; DIVISIONAL APPLICATIONS; EVIDENCE; MASTER
AND SERVANT; ORIGINALITY.

1. In an interference involving an improvement in automobile tire casings,
   in which one of the applicants relied upon an earlier application
   filed prior to the issuance of a patent to his rival, as divisional of his
   later application, it was *held* that one of the claims of the earlier
   application constituted the broad claim of the invention of the issue,
   and therefore the earlier applicant had only the burden of establish-
   ing his case by a preponderance of the evidence.
2. Where it appeared that one of the parties to an interference involving
   an improvement in automobile tire casings employed the other to
   make a tire for him; that the employee wrote to his employer that
   he would do so, but would not assume any responsibility for the
   wear and stability of the work, as it was entirely experimental, and
   thereupon made three casings which embodied the invention of the
   issue; and that the employer then organized a company for the
   manufacture of the casings,—it was *held* that the emplower was en-
   titled to an award of priority, although the employee was the first
   to file his application.

No. 960.   Patent Appeals.   Submitted March 9, 1915.   Decided
                    March 29, 1915.

HEARING on an appeal from a decision of the Commissioner
of Patents in an interference proceeding.          *Affirmed.*

The facts are stated in the opinion.

*Mr. Robert M. Barr* and *Mr. R. M. Hunter* for the appellant.

*Mr. Charles H. Howson* for the appellee.

Mr. Justice VAN ORSDEL delivered the opinion of the court:

This appeal is from the decision of the Commissioner of

Patents in an interference proceeding awarding priority of invention to appellee William D. Harris. The issue is as follows:

"As an article of manufacture an automobile tire casing consisting of an annular shoe made U-shaped in cross section and having gradually increased thickness from the sides to the tread and comprising a fabric case or carcass A, and padding layer C of yielding rubber, a breaker strip D of fabric upon the padding layer, a cover E extending over the padding layer and breaker strip and of gradually increasing thickness as the tread portion is approached from each side and the side portions of the cover separated at their thickest portions to form a wide and very deep annular groove almost the full thickness of the cover, combined with a tread portion secured in said annular groove and composed of layers of woven textile material embedded in rubber and having small elasticity and in which the ends of the fibers of the textile layers are brought to the surface of the tread to receive the wear."

It appears that the application of appellant, Charles E. La

Fleur was filed September 13, 1907, upon which a patent was issued August 24, 1909. Harris's application in interference was filed November 15, 1909. Harris, however, relies upon an earlier application of October 2, 1907, of which he claims the latter application is a proper division. This claim has been approved by the Board of Examiners in Chief and the Commissioner of Patents. Our investigation satisfies us that the finding is amply supported by the record.

On the question of the right of Harris to make the claim, and of continuity between the two applications, there was a division of opinion in the tribunals of the Patent Office. The Examiner of Interferences alone held that the later Harris application was not divisional of the first. In reaching this conclusion, the examiner seems to have overlooked the following claim in the earlier application:

"11. A tire having a wearing surface composed of substantially parallel strips of fabric lying substantially perpendicular to the wearing surface of the tire, a body of fabric extending through the tire, with a body of rubber lying between said body of fabric and the inner edges of the parallel strips."

This, we think, constitutes a broad claim of the invention in issue. Therefore Harris, having filed this application before patent was issued to La Fleur, has only the burden upon him of establishing his case by a preponderance of the evidence.

The real issue in the case is a question of originality, rather than of priority. It appears that in the fall of 1906 Harris employed La Fleur, who followed the business of repairing tires, to make a tire for him. La Fleur made two tires, and also a sample tire which was cut in sections. These tires embodied the issue of the invention. They were delivered to Harris in January, 1907, and paid for by him. Other tires were subsequently made for Harris, and also paid for by him. The dispute is whether the tires were made according to the disclosure of Harris or La Fleur. Each claims to have disclosed the invention to the other.

The tires made in January, 1907, constitute a reduction to practice of the invention; and, since the application of the

respective parties were not filed until some months later, the whole case turns upon whose invention was reduced to practice. No one was present at the first and second meetings of the parties. La Fleur, however, testified that these meetings occurred prior to October 30, 1906. The following letter was written by La Fleur to Harris on October 31, 1906, after the date La Fleur fixes for the two meetings between him and Harris.

Philadelphia, October 31st, 1906.

Mr. W. D. Harris,

    508 Lippincott Bldg.

    Dear Sir:—Following up the conversation we had yesterday relating to recovering two casings with an experimental tread, we will undertake to do this work at a price equal to about $5 over and above our regular price for recovering casings. We do not, however, assume any responsibility for the wear & stability of the work, as it is entirely experimental.

Respectfully,<br>
U. S. Motor Tire Co.,<br>
C. E. La Fleur, Mgr.

Harris testified that early in 1905, he conceived the idea of using strips of duck impregnated with rubber for the tread of automobile tires, and that the strips were cut on the bias and placed side by side to build up the tread. In June, 1905, he had a model illustrating this construction made by the Quaker City Rubber Company, of Philadelphia. This model (Harris Exhibit No. 1) was identified by the witness Daniel, of the Quaker City Rubber Company, and shown by the records of the company to have been made in 1905. Harris is also corroborated by other witnesses to whom he made disclosures prior to meeting La Fleur.

While the evidence of Harris is involved in some uncertainty, it is stronger and more convincing than that of La Fleur. La Fleur's conduct in connection with the making and delivery of the tires to Harris in the early part of 1907, as shown by

the testimony, and especially by the letter above quoted, leads to the irresistible inference that he was a mere employee of Harris. to do the mechanical work of construction, and that he did not at that time believe he had any right to the invention. On the other hand, Harris, by promptly organizing a company for the manufacture of the tires, and by his diligence and activity in connection with the enterprise, exhibited at all times such evidence of proprietorship over the invention as to compel the inference that he owned it.

Concluding, as we must, that La Fleur originally gained his information regarding the invention from Harris; it can profit him nothing that he was the first to file in the Patent Office. The decision of the Commissioner of Patents awarding priority of invention to Harris is affirmed, and the clerk is directed to certify these proceedings, as by law required.     *Affirmed.*